UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SUZANNE M. PULK,

                         Plaintiff,                  **REPORT AND**
                                                                **RECOMMENDATION**

v.                                                          13-CV-00877(S)(M)

DAVID J. WINTER aka "Kissy"
in his individual capacity
as Town Highway Superintendent
of the Town of North Collins,

                         Defendant.
_____

        On August 29, 2013, *pro se* plaintiff Suzanne Pulk commenced this action pursuant to 42 U.S.C. §1983 against defendant David Winter, in his individual capacity as the Highway Superintendent of the Town of North Collins. Complaint [1].[1] Before me is defendant's motion for summary judgment [43]. This motion, being dispositive, has been referred to me by Hon. William M. Skretny for a Report and Recommendation [17]. Oral argument was held on October 14, 2015 [49]. For the following reasons, I recommend that the motion be granted.

**BACKGROUND**

        Plaintiff's claims arise from an ownership dispute over a section of Rocky Mountain Road in the Town of North Collins, New York, which culminated in plaintiff's arrest on September 1, 2010. By Report and Recommendation dated August 22, 2014 [24],[2] I

---

[1]     Bracketed references are to CM/ECF docket entries.

[2]     The parties' familiarity of with the factual allegations of the Complaint, which are set forth in my Report and Recommendation [24], is presumed.

recommended that defendant Winter's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) be granted except to the extent that it sought dismissal of plaintiff's Fourth, Fifth and Fourteenth Amendment claims for false arrest/unlawful imprisonment, malicious abuse of process, and violation of her substantive due process rights. Defendant's Statement of Undisputed Material Facts [43-10], ¶122. That recommendation was adopted by Judge Skretny [25], and thereafter plaintiff did not seek leave to replead any of the dismissed claims.

Relevant to plaintiff's remaining claims, in 1993 she purchased a 15-acre parcel of property on Rocky Mountain Road. Defendant's Statement of Undisputed Material Facts [43-10], ¶¶22-23. Rocky Mountain Road runs between Langford and New Oregon Roads in a north-south direction (id., ¶24). In the summer of 2010, Erie County was involved in a road project in close proximity to Rocky Mountain Road, and defendant Winter made arrangements with the County to use debris and fill from its project to rebuild Rocky Mountain Road (id., ¶¶32, 47).

Sometime prior to September 1, 2010 plaintiff arrived at her property and discovered tracks from heavy machinery and roadway debris that had been dumped onto her property (id., ¶46). This prompted plaintiff to contact defendant Winter, who was allegedly "dismissive and refused to investigate [her] concerns that the property he was dumping on was not, in fact, town property". Plaintiff's Affidavit [45-1], ¶24.

**The September 1, 2010 Incident**

On September 1, 2010 at approximately 6:00 a.m., defendant Winter arrived at the Erie County Sheriff's substation and informed Deputy Brendan Connolly that there "might be some problems" with people protesting the rebuilding on Rocky Mounty Road and "preventing

town vehicles from performing work". Defendant's Statement of Undisputed Material Facts [43-10], ¶52.  Meanwhile, believing that the Town's abandonment of Rocky Mountain Road resulted in her ownership of some portion of Rocky Mountain Road, plaintiff and her father parked two vehicles across Rocky Mountain Road near the intersection of New Oregon Road at 6:00 a.m. that morning (id., ¶66).

At 7:30 a.m., Deputy Connolly arrived at the intersection of New Oregon and Rocky Mountain Roads and observed two vehicles blocking Rocky Mountain Road no more than 80 feet from New Oregon Road (id., ¶53).  Deputy Connolly continued on New Oregon Road past the intersection until he encountered defendant Winter (id., ¶55).  He asked defendant Winter if the vehicles blocking Rocky Mountain Road needed to be moved, and defendant Winter responded "yes, to start working, they have to be moved".  Connolly deposition transcript [43-12], pp. 121-22 of 152; defendant's Statement of Undisputed Material Facts [43-10], ¶55. Deputy Connolly then called County Sheriff's Deputy Thomas Van Wie to meet him at the intersection of New Oregon and Rocky Mountain Roads.  Defendant's Statement of Undisputed Material Facts [43-10], ¶63.

Deputy Connolly understood that Rocky Mountain Road was a public road from what he observed on the map and was told by defendant Winter (id., ¶57).  Deputy Van Wie similarly understood that it was a public road, testifying that "[i]t's listed as a public access road on any map . . . includ[ing] using a GPS". Van Wie deposition transcript [43-13], pp. 26-27 of 133; defendant's Statement of Undisputed Material Facts [43-10], ¶58.

When Deputy Connolly returned to Rocky Mountain Road, he directed plaintiff to move the vehicles, but she refused.  Defendant's Statement of Undisputed Material Facts [43-

10], ¶70. Plaintiff told the deputies that she owned Rocky Mountain Road, but they informed her that she would need to go to court to resolve her ownership claim (id., ¶¶71, 88). The deputies spoke to plaintiff for several minutes in an effort to persuade her to move the vehicles, telling her that the vehicles needed to be moved or she would be arrested (id., ¶¶71-72, 88). Plaintiff's father also told her to move the vehicles (id., ¶72). However, plaintiff continued to refuse to move the vehicles, prompting Deputy Connolly to arrest her (id., ¶73).[3]

**The Criminal Information**

Following her arrest, plaintiff was transported to the Sheriff's sub-station, but since the Town Justice was not available, she was issued an appearance ticket (id., ¶78). The criminal Information signed by Deputies Connolly and Van Wie on September 1, 2010 charged plaintiff with obstructing governmental administration in the second degree, alleging that "with intent to obstruct governmental function [plaintiff] did so by parking her vehicle across Rocky Mountain Rd. with the intent to prevent the Town of North Collins Highway Department from performing work on that road". [43-11], p. 46 of 80.[4] On the following day, defendant Winter signed a Supporting Deposition prepared by Deputy Connolly based on information he received from defendant Winter, which stated: "The Town of North Collins has begun work on Rocky

---

[3] Plaintiff makes no claims against Deputies Connolly or Van Wie. Plaintiff's Affidavit [45-1], ¶40.

[4] "A person is guilty of obstructing governmental administration [in the second degree] when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act". NY Penal Law §195.05.

Mountain Rd. off of New Oregon Rd. . . .  which as been closed for a number of years.  The town's attorney was contacted before the work was started and gave authorization.  On September 1, 2010 at approximately 7:30 A.M. I went to the work site and saw two vehicles blocking Rocky Mountain Rd.  The woman told me to get off of her property.  I drove down New Oregon Rd. where I saw . . . Deputy Connolly.  I relayed to him that the vehicles were on Rocky Mountain Rd. blocking the roadway so the workers wouldn't be able to access the road" (id., p. 47 of 80; defendant's Statement of Undisputed Material Facts [43-10], ¶101).

  Deputy Connolly could not recall at which point defendant Winter told him that Richard Schaus, the Town's Attorney,  had authorized the work. Connolly deposition transcript [43-12], p. 123 of 152.   Although defendant Winter testified in the related state court action that he believed that he told the deputies that he received permission from Mr. Schaus to deposit the fill prior to plaintiff's arrest ([1], p. 18 of 18), he testified in this action that he could not recall whether he informed Deputy Connnolly of that before or after plaintiff's arrest.  Winter deposition transcript [43-12],  p. 77 of 152.

  **Defendant Winter's Communications with the Town's Attorney**

  It is undisputed that before undertaking any work, defendant Winter attempted to contact Mr. Schaus to ascertain whether the Rocky Mountain Road had ever been abandoned by the Town. Defendant's Statement of Undisputed Material Facts [43-10], ¶33.  When he was unable to reach Mr. Schaus directly, he contacted the Town Clerk, Margaret Orrange, and informed her that he needed to reach Mr. Schaus to ascertain whether Rocky Mountain Road had ever been abandoned, since there was an opportunity to rebuild it (id., ¶34).  Ms. Orrange

contacted Mr. Schaus, who was taking his daughter to college at the time, and conveyed defendant Winter's inquiry (id., ¶35). After discussing the issue with his predecessor, Mr. Schaus informed Ms. Orrange that Rocky Mountain Road was never formally abandoned (id., ¶36), and she relayed that message to defendant Winter (id., ¶37).

The parties dispute when these conversations occurred, including whether Ms. Orrange relayed Mr. Schaus' opinion to defendant Winter prior to plaintiff's arrest. Defendant Winter states that when he learned from Ms. Orrange that Mr. Schaus indicated Rocky Mountain Road had never been formally abandoned, he believed that since it was a public road, he was entitled to rebuild it as the Town's Highway Superintendent and that it was at that point that he told the County to commence work. Winter Declaration [43-5], ¶¶5-7. Mr. Schaus states that he was taking his daughter to college in the "last two weeks of August" and that his "conversation with Mrs. Orrange preceded any dumping on Rocky Mount Road" (Schaus Reply Declaration [48-3], ¶¶3, 4), but Ms. Orrange does not indicate when she relayed Mr. Schaus' opinion concerning the abandonment of Rocky Mountain Road to defendant Winter. Orrange Declaration [43-4].

In contrast, plaintiff points to a police report prepared by Deputy Connolly from subsequent events involving plaintiff, which contains the following entry: "On September 6, 2010 I heard that the town attorney never spoke to Winter regarding the issue. I later drove by the intersection of New Oregon Rd. and Rocky Mountain Rd. and saw a sign on Rocky Mountain Rd. stating that it is a private driveway and not a public road . . . . I informed Lt. Simet of the situation and placed a call to the town Attorney, Richard Schauss [*sic*]. Schauss later called back

and spoke with Deputy Van Wie.  Schauss informed Van Wie that all parties agreed that no work will be performed at this time until the issue can be researched." [45-10], p. 2 of 3.

Plaintiff also relies upon Ms. Orrange's deposition testimony in the State Court Action where the following exchange occurred:

> "Q. In September of 2010, do you recall discussing with Mr. Winter the legal ownership of Rocky Mountain Road? . . .
>
> A. I want to say something, but I just have to say no.
> [Attorney] Just answer the question as . . . best you can.
>
> A. No.
>
> Q. Mr. Winter testified here previously that you told him the town owned Rocky Mountain Road, and that's why I'm asking you; did you tell him that? . . .
>
> A. Mr. Winter said to me, I'm trying to get hold of Mr. Schaus to find out if we ever closed that road.  And Mr. Schaus was out of town. . . . I called Mr. Schaus - - [Attorney] Now I would direct you knot to say anything Mr. Schaus told you. . . .
>
> A. Well, I just told Mr. Schaus that Mr. Winter was trying to get hold of him to determine it.  I didn't tell Mr. Winter anything. I was just said, you know - - I was the go-between". [43-13], p. 39 of 133.

However, in support of defendant's motion, Ms. Orrange submits a Declaration explaining that her responses during her deposition in the state court action were "constrained" by the attorney's direction "not to disclose what Mr. Schaus had said to me or what I reconveyed to Mr. Winter for Mr. Schaus".  Orrange Declaration [43-4], ¶11.

**Dismissal of the Charge**

The charge against plaintiff was reduced to an adjournment in contemplation of dismissal, and eventually dismissed on January 28, 2011.  Defendant's Statement of Undisputed Material Facts [43-10], ¶109; [43-2], p. 39 of 40.

**The State Court Action**

In the week following plaintiff's September 1, 2010 arrest, plaintiff and her neighbors commenced suit in State of New York Supreme Court, County of Erie, against the Town, defendant Winter (in his official capacity), and others for, *inter alia*, trespass and nuisance.  Defendant's Statement of Undisputed Material Facts [43-10], ¶¶110-11.  Segmenting Rocky Mountain Road into upper, middle and lower sections (id., ¶26), Supreme Court Justice Patrick NeMoyer concluded in a June 26, 2013 Decision and Order that the middle segment was abandoned by the Town and reverted to the ownership of plaintiff and her neighbors. (id., ¶¶28-29).  However, Justice NeMoyer concluded that the lower segment, which runs from the intersection of New Oregon Road where plaintiff parked her vehicles, was never abandoned and remained owned by the Town (id., ¶¶30, 74, 86).  In January 2015, plaintiff was awarded $18,500 for her claims of trespass and nuisance concerning the middle segment of Rocky Mountain Road.  Decision and Verdict [43-11], pp. 30-44 of 80.

ANALYSIS

A.  **Summary Judgment Standard**

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

B.  **False Arrest/Unlawful Imprisonment Claim**

"[S]ection 1983 claims of false arrest and false imprisonment . . . are synonymous under federal law". Waddlington v. City of New York, 971 F.Supp.2d 286, 291 (E.D.N.Y. 2013). See Faccio v. Eggleston, 2011 WL 3666588, *3 n.1 (N.D.N.Y. 2011) ("False arrest and unlawful imprisonment are synonymous under New York law, and a §1983 claim for false arrest is substantially the same as a claim for false arrest under New York law"). "[A]n action for false arrest requires that the plaintiff show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged ." Ackerson v. City of White Plains, 702

F.3d 15, 19 (2d Cir. 2012). "A confinement is privileged if it is supported by probable cause." Paul v. Bank of America Corp., 2011 WL 684083, *8 (E.D.N.Y. 2011).

"This case presents the atypical situation of a civilian, as opposed to an arresting officer, being sued for false arrest." TADCO Construction Corp. v. Dormitory Authority of the State of New York, 700 F. Supp. 2d 253, 268-69 (E.D.N.Y. 2010). However, even "where there is no claim that a defendant actually restrained or confined a plaintiff, a claim of false arrest or false imprisonment may lie where a plaintiff can show that defendant instigated his arrest, thereby making the police agents in accomplishing defendant's intent to confine the plaintiff". Chepilko v. City of New York, 2012 WL 398700, *10 (E.D.N.Y. 2012).

"[M]erely making false statements to the police is not sufficient to support a false arrest" claim. Olowosoyo v. City of Rochester, New York, 2009 WL 1650419, *4 (W.D.N.Y. 2009) (Telesca, J.). "'[A] plaintiff must show that the defendant took an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff.'" Vlach v. Staiano, 604 Fed. App'x 77, 78 (2d Cir. 2015) (Summary Order); Lowmack v. Eckerd Corp., 303 A.D.2d 998, 999 (4th Dep't. 2003). "Liability may attach only when the defendant has affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition." Id. *See also* Fogelman v. Donato, 111 F.Supp.3d 282, 286 (E.D.N.Y. 2015) ("The individual must have instigated the arrest by behaving actively and officiously or with undue zeal").

Where a defendant's statement provides probable cause for an arrest, liability may still exist if the defendant "instigated the arrest and knew that there was no probable cause", since "[o]bviously, a person who knowingly gives false information to the police cannot then invoke the probable cause defense which might be available to the police acting upon the information given". Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U., 605 F.2d 1228, 1248 (2d Cir. 1979). However, "[w]hen police independently act to arrest a suspect on information provided by a party, that party is not liable for false imprisonment [i.e. arrest] - even if the information provided is later found to be erroneous". Vlach, 604 Fed. App'x at 78-79. Thus, "in the absence of probable cause to support an arrest, someone who requests or insists that a police officer or agency arrest another person, as opposed to merely making a statement and leaving it to the officer to decide, is liable to the arrestee for false arrest or false imprisonment". Fowler v. Robinson, 1996 WL 67994, *5 (N.D.N.Y. 1996). *See also* Lopez v. City of New York, 901 F. Supp. 684, 688 (S.D.N.Y. 1995) ("A defendant who is not an arresting officer may be liable for false arrest if the defendant instigated an arrest by a police officer, knowing that there was no probable cause to believe that plaintiff committed a crime. However, if the officer decided, in the exercise of the officer's own discretion, to make the arrest, then a person providing information to the officer is not liable").

Defendant Winter argues that the presence of probable cause for plaintiff's arrest is fatal to her claim. Defendant's Memorandum of Law [43-14], pp. 10-11. In response, plaintiff does not dispute that there was probable cause for her arrest. *See* Plaintiff's Memorandum of

Law [45-11], pp. 9-11.[5]  Instead, plaintiff argues that defendant "Winter had no 'probable cause' to believe the statement he was making was true.  He had absolute knowledge that he had not spoken to the town attorney, that the town attorney had not in fact been 'contacted before the work was started and gave authorization' . . . . Winter's statement to the deputies that the town attorney had confirmed the ownership of the road was a direct basis for the deputies to arrest and remove [plaintiff]." Plaintiff's Memorandum of Law [45-11], p. 10.

Defendant Winter argues that he made no false statements.  Defendant's Memorandum of Law [43-14], pp. 16-17.  I agree that neither Ms. Orrange's deposition testimony in the state court action nor Deputy Connolly's September 6, 2010 notation in his police report that he "heard that the town attorney spoke to Winter regarding this issue" ([45-10], p. 2 of 3), are sufficient to raise a triable issue of fact as to whether defendant Winter learned from Mr. Schaus (via Ms. Orrange) prior to plaintiff's arrest that Rocky Mountain Road was not formally abandoned.  In any event, I agree with plaintiff that there is no evidence that Mr. Schaus authorized the work as defendant Winter stated.  Plaintiff's Affidavit [45-1], ¶¶51, 52.

However, defendant Winter's statement that Mr. Schaus authorized the work did not cause plaintiff's arrest, which was supported by probable cause independent of that statement. Defendant's Memorandum of Law [43-14], p. 16.  Significantly, defendant Winter did not request or insist that plaintiff be arrested.  He merely made a complaint to the deputies that municipal vehicles needed to access Rocky Mountain Road (Connolly deposition transcript [43-

---

[5]    While plaintiff alleges that the governmental function she interfered with was construction vehicle access to the middle segment of Rocky Mountain Road - the segment of the road that was later determined to have been abandoned by the Town - for the purpose of dumping fill and debris thereon (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts [45-12], ¶95), she does not dispute that her conduct obstructed another governmental function by preventing the construction vehicles from accessing the public segment of Rocky Mountain Road (id., ¶¶95-97).

12], p. 140 of 152), which was neither false nor the sole basis for plaintiff's arrest. "The only statement by Winter to Deputy Connolly that was necessary for [plaintiff's] arrest was that she had parked vehicles on Rocky Mountain Road to prevent construction vehicles from accessing that Road. This was accurate - - and was confirmed when the deputies arrives at the scene." Defendant's Memorandum of Law [43-14], p. 16. *See* Crosby v. New York State Office For People With Developmental Disabilities, 2015 WL 5542517, *4 (W.D.N.Y. 2015) (Foschio, M.J.), adopted, 14-cv-656 [16] (W.D.N.Y. 2015) (Arcara, J.) (dismissing a false arrest claim under Rule 12(b)(6) where plaintiff did "not allege that Deputy Pence relied solely on [the individual defendant's] statements and did not conduct his own investigation, or that Individual Defendants importuned Pence to arrest Plaintiff").[6]

        Deputy Connolly testified that defendant Winter's statements about Mr. Schaus "just gave more credibility . . . that there was no property dispute", since it was his preexisting belief, that it was a public road. Connolly's deposition transcript [43-12], p. 141 of 152. Indeed, Deputy Connolly acknowledged that if he was told only that County vehicles needed to access Rocky Mountain Road, he would have had probable cause to arrest plaintiff for obstruction of governmental administration (id.). Simply stated, it was the fact that plaintiff had parked two vehicles on a public road which were blocking municipal vehicles from passing, not defendant Winter's false statement that Mr. Schaus authorized the work, that created probable cause to arrest her for obstruction of governmental administration (id., pp. 147-48 of 152 ("Q. Is there

---

[6]    *Compare with* Chepilko, 2012 WL 398700, at *10 (denying summary judgment on a claim of false arrest against a civilian complainant, who falsely informed the officers that plaintiff had physically attacked him and that he wished to press charges).

anything . . . that Mr. Winter said or did that caused [plaintiff] to get arrested other than the fact that . . . [the County vehicles] want[ed] to get past the point in which she has parked the cars? A. No.").

Additionally, plaintiff's "claim fails because she has proffered no evidence that [defendant] Winter intended her to be arrested/confined as opposed to simply asked to move the cars". Defendant's Reply Memorandum of Law [48], p. 4 n. 6 (emphasis omitted). "To show that a private party 'intended to confine [the plaintiff] . . . [it] is not enough that the defendant's words or actions caused a police officer to confine him; plaintiff must show that the defendant directed an officer to take him into custody.'" Friedman v. Self Help Community Services, 2015 WL 1246538, *17 (E.D.N.Y. 2015); Du Chateau v. Metro North Commuter Railroad Co., 253 A.D.2d 128, 132 (1st Dep't. 1999). Here, it is undisputed that defendant Winter did not direct or request Deputy Connolly or Van Wie to take plaintiff into custody. Therefore, I recommend that this claim be dismissed.

**C.     Malicious Abuse of Process**

"[A] malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process". Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003). Defendant Winter argues, *inter alia*, that plaintiff's claim for malicious abuse of process fails since he did not employ legal process. Defendant's Memorandum of Law [43-14], pp. 12-13. I agree.

"In general, 'legal process' will be satisfied in one of two ways: it may take the form of a warrant, such that the ensuing arrest satisfies this standard, or it may take the form of a subsequent arraignment, such that any post-arraignment deprivations of liberty might satisfy this standard." Rarick v. DeFrancesco, 94 F. Supp. 2d 279, 290 (N.D.N.Y. 2000). Thus, "[a] warrantless arrest that occurs before a suspect is arraigned . . . does not constitute a seizure effected pursuant to legal process because no legal process was utilized". Rarick v. DeFrancesco, 94 F. Supp. 2d 279, 290 (N.D.N.Y. 2000). Since defendant Winter did not employ any process prior to plaintiff's warrantless arrest, I conclude that this claim fails. *See* Sforza v. City of New York, 2009 WL 857496, at *17 (S.D.N.Y. 2009) (plaintiff's claim which arises from "a warrantless arrest, does not involve legal process"); Schoolcraft v. City of New York, 103 F. Supp. 3d 465, 524, reconsideration granted in part on other grounds, 2015 WL 5542770 (S.D.N.Y. 2015).

Alternatively, defendant Winter argues that the existence of probable cause for plaintiff's arrest is fatal to this claim. Defendant's Memorandum of Law [43-14], pp. 11-12. While some courts have recognized that "the presence of probable cause negates a claim for abuse of process, particularly the second element" (Sforza, 2009 WL 857496 at *17), others have disagreed. *See, e.g.*, Conte v. County of Nassau, 2010 WL 3924677, *22 (E.D.N.Y. 2010). The Second Circuit has recently acknowledged that "[t]here has been considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process under New York law", but declined to resolve that confusion. Mangino v. Incorporated Village of Patchogue, 808 F.3d 951, 958 (2d Cir. 2015). Without any definitive guidance from the Second Circuit, I will follow Judge Skretny's previous holding in Suleski v. Harlach, 2013 WL 4679120,

*3 (W.D.N.Y. 2013) (Skretny, J.) that "although [claims for false arrest and malicious abuse of process] ha[ve] unique elements, a lack of probable cause is common to . . . them, and unless [the plaintiff] can demonstrate a lack of probable cause, his claims must fail".

In any event, even if probable cause were determined not to constitute a complete defense to such a claim, I would accept defendant Winter's argument that he is entitled to qualified immunity. Defendant's Memorandum of Law [43-14], pp. 23-25. See Mangino, 808 F.3d at 959 (the "very existence [of confusion of over whether probable cause is a complete defense to an abuse of process claim] establishes that [the defendant] is entitled to qualified immunity"). Therefore, I recommend that this claim be dismissed.

D.   **Substantive Due Process**

Defendant Winter seeks dismissal of this claim arguing, *inter alia*, that "any such claim would be duplicative of constitutional claims asserted by [plaintiff]". Defendant's Memorandum of Law [43-14], p. 20. Plaintiff does not respond to this argument.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994). As argued by defendant Winter and undisputed by plaintiff, her substantive due process claim arises from the (1) taking of her property by the depositing of fill on the middle segment of Rocky Mountain Road, (2) false arrest, and/or (3) the abuse of process. Defendant's Memorandum of Law [43-14], pp. 17-18.

However, each of these theories falls within other protections. *See* Fusco v. State of Connecticut, 815 F.2d 201, 206 (2d Cir. 1987) ("governmental action allegedly causing a decline in property values has never been held to 'deprive' a person of property within the meaning of the Fourteenth Amendment"); Jackson ex rel. Jackson v. Suffolk County, 87 F. Supp. 3d 386, 399 (E.D.N.Y. 2015) ("Because the Fourth Amendment provides the source for a claim under Section 1983 premised upon an allegedly false arrest . . . plaintiffs cannot state a substantive due process claim against defendants based on such conduct"); Mangino v. Incorporated Village of Patchogue, 739 F. Supp. 2d 205, 252 (E.D.N.Y. 2010), reconsideration granted in part on other grounds, 814 F. Supp. 2d 242 (E.D.N.Y. 2011) ("plaintiffs' claim of abuse of process falls squarely within the protections of the Fourth Amendment. Accordingly, a substantive due process analysis is inappropriate").[7] Therefore, I recommend that this claim be dismissed.[8]

**CONCLUSION**

For these reasons, I recommend that defendant's motion for summary judgment [43] be granted. Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by April 25, 2016 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right

---

[7] *Compare with* Goldring v. Zumo, 2015 WL 148451, *2 n. 4 (E.D.N.Y. 2015) ("claims of abuse of process brought via §1983 are typically analyzed under the rubric of procedural, not substantive, due process").

[8] Based upon my recommendation, it is unnecessary for me to address defendant's remaining arguments that plaintiff's claims are barred by *res judicata* and the Rooker-Feldman doctrine (defendant's Memorandum of Law [43-14], pp. 3-6), and that his conduct is protected by qualified immunity (id., pp. 23-25).

to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: April 7, 2016

                                          /s/ Jeremiah J. McCarthy
                                          JEREMIAH J. MCCARTHY
                                          United States Magistrate Judge